UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| THOMPSON TRACTOR CO. INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  2:20-cv-02210 |
| ) | |
| DAILY EXPRESS INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER & OPINION

This matter is before the Court on cross-Motions for Summary Judgment filed by the parties. Both Motions have been fully briefed and are ripe for review. For the following reasons, Defendant's Motion for Summary Judgment (doc. 21) is denied, and Plaintiff's Motion for Summary Judgment (doc. 23) is granted in part and denied in part.

### BACKGROUND[1]

In May 2019, Plaintiff Thompson Tractor Co., Inc., purchased and agreed to deliver an industrial-grade generator manufactured by Caterpillar, Incorporated, to a third-party purchaser and solicited Defendant Daily Express, Inc., to transport the generator from the Caterpillar facility in East Peoria, Illinois, to the third-party purchaser's jobsite in Huntsville, Alabama. (Docs. 22-1 at Ex. A; 24-1). On May 20, 2019, Dan Gladu, a driver contracted by Defendant, received the generator at the

---

[1] The facts in this section are undisputed unless otherwise noted.

Caterpillar facility in apparent good working order and condition, as indicated by Gladu's signature on the bill of lading, which was issued by Caterpillar. (Doc. 3).

At some point during transport Gladu's tractor-trailer partially left the roadway, requiring the use of a tow truck to place the tractor-trailer back onto the roadway. (Doc. 24-3 at 6–8). Gladu arrived at the Alabama jobsite on May 22, but the generator could not be offloaded on that date because the crane at the jobsite was inoperable. (Docs. 3; 22-1 at 18). At some point after arriving, Gladu was greeted by Mark Waddell, an employee of Plaintiff's, who observed the generator while it was on Gladu's trailer; Waddell did not note any damage thereto. (Doc. 22-1 at 22).

On May 25, the generator was offloaded, and Eleazar Torres, Jr., an employee of SBE (the electrical subcontractor for the third-party purchaser's jobsite) conducted an offload damage inspection and signed the bill of lading without indicating any damage to the generator (docs. 3; 22-1 at 19); no employee or representative of Plaintiff was present for the offloading or the offload damage inspection (docs. 22-1 at 19–20; 24-1), and no employee or representative of Plaintiff signed the bill of lading (*see* doc. 3). When employees of Plaintiff returned to the jobsite three days later,[2] Kevin Meadows, an employee of Plaintiff's, conducted a damage inspection and discovered damage to the generator's fuel tank. (Doc. 25-9).[3] The cost to transport the

---

[2] The cargo was offloaded during Memorial Day weekend. (Doc. 24-1).
[3] Defendant challenges the admissibility of Meadows' Affidavit (doc. 25-9), arguing his existence as a potential witness was not timely disclosed. However, Defendant's own discovery requests indicate Meadows' existence was disclosed during discovery, and Defendant did in fact request discovery pertaining to Meadows. (*See* doc. 25-1 at 5). Thus, any error is harmless, and Defendant's request to exclude is denied. As

2

generator back to the Caterpillar facility, repair the damage, and transport the generator back to the Alabama jobsite totaled $202,631.66.[4] Plaintiff now seeks damages in that amount pursuant to the Carmack Amendment.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmovant bears the burden of demonstrating that such a genuine issue of material fact exists." *Aregood v. Givaudan Flavors Corp.*, 904 F.3d 475, 482 (7th Cir. 2018). The parties must support their assertions that a fact is disputed or cannot be genuinely disputed by citing to admissible evidence in the record. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018).

The record is viewed in the light most favorable to the nonmovant, and the Court must draw all reasonable inferences from the evidence in the nonmovant's

---

Defendant does not cite any evidence contradicting Meadows' observation of damage on May 28, that fact is deemed admitted. *See* Civil LR 7.1(D)(3)(a).

[4] Defendant's only challenge to Plaintiff's damage calculation is that Plaintiff has not included evidence of lost profits (doc. 27 at 20); however, Plaintiff has not requested damages for lost profits (*see* doc. 24 at 4–5). As Defendant makes no other challenge to Plaintiff's damage calculation, the Court finds any such argument is waived and the damage calculation to be admitted fact. *Mack v. City of Chicago*, 788 F. App'x 396, 398 (7th Cir. 2019) ("[B]y failing to raise this issue in opposition to the motion for summary judgment, [the plaintiff] waived the argument.").

favor. *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 536 (7th Cir. 2018). When presented with cross-motions for summary judgment, the Court must consider the motions separately, which necessarily means the nonmovant differs depending on the motion being considered. *See Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 465 (7th Cir. 2018) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). This, however, does not alter the standard for reviewing a motion for summary judgment or the parties' respective burdens.

## DISCUSSION

### I. Procedural Arguments

Defendant seeks summary judgment on numerous procedural grounds. First, Defendant asserts multiple arguments challenging Plaintiff's prudential standing to litigate the claim at bar. (Doc. 22 at 5). Second, Defendant claims Plaintiff's prelitigation written claim was inadequate, precluding this lawsuit. (Doc. 22 at 9).

#### A. Prudential Standing

##### 1. Plaintiff's Status under the Bill of Lading

Congress enacted the Carmack Amendment to create "a nationally uniform rule of carrier liability concerning interstate shipments." *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697 (7th Cir. 2008) (*REI*) (quoting *North Am. Van Lines v. Pinkerton Sec. Sys.*, 89 F.3d 452, 454 (7th Cir. 1996)). Per the Carmack Amendment, a carrier of an interstate shipment is "liable to the person entitled to recover under the receipt or bill of lading." 49 U.S.C. § 14706(a)(1). "The 'person entitled to recover' can bring suit against either the delivering carrier or the originating carrier for the 'actual loss or injury to the property caused' by any carrier

in the course of the interstate shipment." *REI*, 519 F.3d at 697 (quoting 49 U.S.C. § 14706(a)(1)). "A shipper can thus be confident that the carrier will be liable for any damage that occurs to its shipment. And a carrier can accurately gauge, and thus insure against, any liability it may face when it agrees to carry something." *Id.*

Pursuant to the Carmack Amendment, the carrier is responsible for issuing a receipt or bill of lading, but "failure to issue a receipt or bill of lading does not affect the liability of a carrier." § 14706(a)(1). Here, Defendant, the carrier, did not issue a bill of lading or receipt; rather, Caterpillar, the manufacturer of the generator, issued the bill of lading. (Doc. 3). That bill of lading identified Plaintiff (Thompson) as the "dealer" who, the undisputed facts establish, purchased the cargo from Caterpillar and arranged its shipment to the Alabama jobsite (docs. 3; 22 at 2 (Defendant's assertion Plaintiff purchased[5] the cargo); 25 at 3[6] (Plaintiff's assertion it contracted with and paid Defendant for carrier services)). In other words, Plaintiff was the owner/shipper/consignor of the cargo at issue. Shippers of cargo are generally

---

[5] Defendant's position that Plaintiff was not the "owner" of the cargo at all relevant times is untenable. Defendant itself alleges Plaintiff purchased the cargo, insured it, and received insurance proceeds after it was damaged (doc. 22 at 2), all of which Plaintiff admits while asserting it was, in fact, the owner (doc. 25 at 3, 6). In disputing the allegation Plaintiff owned the cargo, Defendant fails to cite any evidence contradicting Plaintiff's ownership and instead cites Plaintiff's answer to its request for production of documents, which indicates Plaintiff produced documents. (Docs. 28 at 2; 27-3 at 4). In light of the undisputed facts and Defendant's failure to cite any evidence contradicting Plaintiff's ownership of the cargo, the Court finds the fact admitted. Civil LR 7.1(D)(3)(a).

[6] Defendant inexplicably disputes this fact and complains about the timeliness of Plaintiff's disclosure of this fact but does not expressly object to the admissibility of the evidence or cite any evidence contradicting the alleged fact. (Doc. 28 at 3). Accordingly, the Court finds this fact admitted. Civil LR 7.1(D)(3)(a).

5

considered persons entitled to recover under a bill of lading, as Defendant begrudgingly concedes (doc. 28 at 2). *See generally REI*, 519 F.3d at 697 ("A shipper can thus be confident that the carrier will be liable for any damage that occurs to its shipment.").

Defendant's arguments regarding Plaintiff's status under the bill of lading are unavailing, and the case law on which it relies is nonbinding and distinguishable. (*See* doc. 22 at 6–7). Firstly, it was *Defendant's* responsibility to issue an accurate bill of lading or receipt for the shipment. § 14706(a)(1); *see also* 49 C.F.R. § 373.101. Defendant's attempt to evade liability based on perceived inadequacies or inaccuracies in the bill of lading here thus flies in the face of justice and is an attempt to shift the consequences of its own failure to Plaintiff. Secondly, the failure to issue a bill of lading or receipt does not affect the liability of a carrier, § 14706(a)(1), so a perceived failure to expressly name the proper parties thereto cannot affect a proper party's standing to recover. Finally, Defendant's position that the bill of lading does not identify Plaintiff as an interested party is patently false, as discussed above.

For these reasons, Plaintiff is a person entitled to recover under the bill of lading issued here.

### 2. Unjust Enrichment

Defendant's next argument is somewhat of a theme throughout its challenge to Plaintiff's prudential standing. It argues Plaintiff should not be permitted to proceed with its claim because it was compensated for the loss at issue by its insurer, suggesting the insurer, rather than Plaintiff, is the real party of interest; according to Defendant, Plaintiff would be unjustly enriched if it prevails on its claim. (Docs. 22

at 7; 28 at 9). This one-paragraph argument, however, cites no legal authority whatsoever and is wildly undeveloped. To obtain summary judgment, the movant must demonstrate entitlement to judgment *as a matter of law*. Fed. R. Civ. P. 56(a). This undeveloped and unsupported argument does not do that.

Even if the Court agreed Plaintiff's insurer was the real party in interest, the Court could not grant summary judgment in favor of Defendant on this ground. The proper vehicle for Defendant's argument is a motion or objection under Federal Rule of Civil Procedure 17, which states:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). Thus, the proper remedy is not summary dismissal of Plaintiff's claim.

Motions or objections under Rule 17 must "be raised when such joinder is practical and convenient." *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010). Here, Defendant chose to wait until the summary judgment stage to raise its concerns—in an improper form—despite learning of the facts necessary to raise an objection during discovery or possibly earlier.[7] And the fact it simultaneously—and erroneously[8]—

---

[7] The evidence cited for Defendant's allegation Plaintiff's insurer paid Plaintiff's claim for the damage to the cargo was a deposition taken in April 2021. (Doc. 22-1 at 2).

[8] Defendant claims the deadline to add parties has "long since passed." While it is true the parties' agreed deadline to add parties was March 31, 2021 (doc. 10 at 3), the mandatory nature of Rule 17(a)(3) as well as the Court's inherent authority to manage its docket and the requirement that leave to amend be "freely granted as

7

argues Plaintiff's insurer is "forever barred" from being added as a party to this litigation (doc. 22 at 8) demonstrates its intent to engage in the type of tactical ambush the undersigned will not condone. *See Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 1339489, at *3 (N.D. Ill. Apr. 18, 2012) ("Because the current motion smacks of the kind of tactical ambush that courts have warned against in the Rule 17(a) context, and because of the defendants' unreasonable delay in bringing the motion, case-specific considerations of fairness point to the conclusion that the defendants have waived their objection under the real-party-in-interest doctrine[.]").

For these reasons, the Court finds Defendant's argument has been waived. *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir.), *opinion amended on denial of reh'g*, 387 F. App'x 629 (7th Cir. 2010) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *see also RK Co.*, 622 F.3d at 850 ("Today, we too hold that 'real party in interest' is a defense subject to waiver."); *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1431 (3d Cir. 1994) (cited by the Seventh Circuit in *RK Co.* for the proposition that a Rule 17 objection raised at summary judgment is untimely).

### 3. Plaintiff's Insurer's Standing

As Plaintiff's insurer is not party to this litigation and is not seeking to join this litigation, its standing is irrelevant and need not be discussed.

---

justice so requires," Fed. R Civ. P. 15(a)(2), as well as other judicial principals demonstrates amendment is not impossible, even at this late stage.

B.  *Written Claim Requirement*

Defendant next challenges the adequacy of Plaintiff's written claim for damage to the cargo at issue. (Doc. 22 at 9). Defendant concedes it received a written claim from Plaintiff and does not argue the claim is deficient in substance; rather, Defendant merely challenges the mode by which the written claim was delivered, arguing the electronically delivered written claim is deficient because Defendant had not previously consented to electronic delivery. (Docs. 22 at 11–12; 28 at 6).

Congress delegated to the Interstate Commerce Commission (ICC) the responsibility to enact regulations pertaining to, *inter alia*, issues involving motor carriers. 49 U.S.C. § 13301(a). Pursuant to this authority, the ICC has promulgated two nearly identical regulatory provisions, both captioned "Principles and Practices for the Investigation and Voluntary Disposition of Loss and Damage Claims and Processing Salvage." 49 C.F.R. § 370.3; 49 C.F.R. § 1005.2. Both mandate a timely written claim prior to the voluntary payment of a claim for damage to cargo covered by a bill of lading or other contract of carriage and dictate the requisite form and substance of such a claim. §§ 370.3(a), (b); §§ 1005.2(a), (b). One difference between the two regulations is that § 1005.2(b) differentiates between written and electronic communications and requires a prior agreement to receive electronic communications, whereas § 370.3(b) makes no such distinction and refers only to a "written communication."

Defendant cites no binding authority for the proposition that an adequate written claim under either § 370.3 or § 1005.2 is a condition precedent to filing a

lawsuit under the Carmack Amendment.[9] (Doc. 22 at 10–11). Rather, Defendant cites a slew of nonbinding circuit decisions to that effect (doc. 22 at 10), and its ultimate argument—that, consistent with § 1005.2(b), there must be prior approval to receive a written claim electronically—is based on two district court cases from outside this Circuit (doc. 22 at 11 (citing *Raineri v. N. Am. Van Lines, Inc.*, 906 F. Supp. 2d 334, 341–42 (D.N.J. 2012); and *Chapman v. Allied Van Lines, Inc.*, No. 5:15-CV-00615, 2018 WL 701627, at *7 (E.D.N.C. Feb. 2, 2018))).

However, the Seventh Circuit has held § 1005.2, which is expressly limited to *voluntary* settlement of claims, does not apply to contested cases litigated in a court of law, *Wis. Packing Co. v. Ind. Refrigerator Lines, Inc.*, 618 F.2d 441, 445 (7th Cir. 1980), as the undersigned noted in its Order on Defendant's Motion to Dismiss (doc. 15 at 17–18). Any written-claim requirement must therefore appear in the bill of lading or other contract of carriage. *See id.* at 444–45; *Ace Motors, Inc. v. Total Transp., Inc.*, No. 08-C-1552, 2009 WL 2031780, at *2 (N.D. Ill. July 10, 2009) ("The Carmack Amendment, itself, neither requires written claims nor imposes any other restrictions on the form of notice." (internal quotation marks omitted)).

Defendant's attempt to factually distinguish *Wis. Packing Co.* (doc. 28 at 6) misses the mark because the case held, *as a matter of law*, the formalities of § 1005.2 are inapplicable to contested cases. Thus, the cases cited by Defendant holding the formalities of § 1005.2 must be honored as a condition precedent to filing a lawsuit

---

[9] Of course, the parties may agree to such terms in a bill of lading or other contract of carriage. *E.g.*, *St. Louis, I.M. & S. Ry. Co. v. Starbird*, 243 U.S. 592, 604–05 (1917). The parties here did not.

under the Carmack Amendment are directly contrary to binding Seventh Circuit precedent. It seems Defendant attempts to sidestep this fact by emphasizing § 370.3 over § 1005.2 in its analysis. However, Defendant makes no argument that the Seventh Circuit would find § 370.3—which, identical to § 1005.2, expressly applies to *voluntary* settlement of claims—is binding in contested cases such as this. Even if Defendant had made such an argument, it would be unpersuasive in light of the Seventh Circuit's analysis in *Wis. Packing Co*. Given the nearly identical language and purpose of the two regulations, it is highly unlikely the Seventh Circuit would find one regulation applies to contested cases and the other does not.

For these reasons, the Court finds Defendant has not carried its burden to prove either § 370.3 or § 1005.2 is binding in this case, and its argument for summary judgment for an alleged failure to comply with the formalities of either or both regulations must therefore be rejected. If Defendant wished to mandate compliance with § 370.3 and/or § 1005.2 as a condition precedent to filing a lawsuit under the Carmack Amendment, it could have done so by complying with its statutory responsibility to issue a bill of lading reflecting the agreement between the parties.

## II. Substantive Arguments

Both parties move for summary judgment on Plaintiff's substantive claim under the Carmack Amendment.

> The prima facie case under the Carmack Amendment is straightforward: a plaintiff must show (1) delivery in good condition; (2) arrival in damaged condition; and (3) the amount of damages. If the plaintiff establishes the prima facie case, the burden shifts to the defendant to show both that it was free from negligence and that the

11

> damage to the cargo was due to one of the excepted causes relieving the carrier of liability[.]

*REI*, 519 F.3d at 699 (internal citations and quotation marks omitted). As stated, Defendant has waived any challenge to Plaintiff's calculation of damages, but it does challenge the adequacy of Plaintiff's evidence to prove the first two elements. (*See* doc. 22 at 12–16). Plaintiff, on the other hand, claims it has fully met its burden and is therefore entitled to summary judgment. (Doc. 24 at 6–9).

### A.  *Delivery in Good Condition*

Plaintiff's argument as to the first element of its Carmack Amendment claim is remarkably short but effective: "As to the first element, that Plaintiff delivered the Generator to Defendant in good condition, Defendant, through its driver, admitted that it received the Generator in good condition. See Undisputed Material Facts ("UMF") at 3–5." (Doc. 24 at 6). The three allegations of fact cited are as follows: (1) "Defendant's driver Dan Gladu arrived at Caterpillar to accept and transport the Generator on May 20, 2019"; (2) "Dan Gladu inspected the Generator prior to departing Caterpillar which inspection revealed no damage, structural or otherwise, to it"; and (3) "Dan Gladu noted on the Bill of Lading that he conducted an inspection of the Generator prior to departing and did not find, or indicate, any damage to it." (Doc. 24 at 2). In support of these allegations, Plaintiff cites the bill of lading (docs. 3; 23-2) and Gladu's deposition testimony (doc. 23-3 at 10–13).

Excepting the date on which Gladu arrived at the Caterpillar facility,[10] Defendant admits these facts, though it claims the second and third allegations are immaterial. (Doc. 27 at 2, 6–7). In support of its contention that the allegations are immaterial, Defendant argues: "Defendant driver's inspection of the property alone, without corroboration, does not satisfy the requirement that good condition be established and proven by the Plaintiff." (Doc. 27 at 6). Defendant continues:

> The absence of a notation of damage by the transport driver on a bill of lading is immaterial to prove good condition of the property when tendered to a carrier because the burden of such proof rests with the plaintiff. Evidence of the condition of property must be advanced by the plaintiff, and must corroborate other evidence, but "good condition" cannot be "proven" by conduct taken or not taken by the carrier against which property damage is alleged.

(Doc. 27 at 6–7). These statements, which are actually substantive arguments, do not demonstrate why Plaintiff's allegations of fact are immaterial rather than material. If anything, Defendant's adamance that these allegations are insufficient to carry Plaintiff's burden of proof demonstrates their materiality, as they relate directly to a fact Plaintiff must ultimately prove.

"[A] shipper may establish by circumstantial evidence that its cargo was in good condition upon delivery to the carrier."[11] *Allied Tube & Conduit Corp. v. S. Pac. Transp. Co.*, 211 F.3d 367, 371 (7th Cir. 2000) (citing *Pharma Bio, Inc. v. TNT Holland Motor Exp., Inc.*, 102 F.3d 914, 917 (7th Cir. 1996)). Here, Gladu signed the

---

[10] Defendant states Gladu arrived at the Caterpillar facility to accept the cargo on May 18, 2019, not May 20, citing the bill of lading, which indicates a May 18th arrival date and a May 20th departure date. (Docs. 27 at 6; 3).

[11] Defendant's statement that "circumstantial evidence needs to be corroborative of other evidence" (doc. 22 at 14) is unsupported by the case it cites, which says nothing of the need for corroborative evidence.

13

bill of lading indicating a damage inspection was completed at the time of loading and noting no damage to the cargo.[12] (Doc. 3). Gladu further testified in his deposition that he personally inspected the cargo once it was loaded onto his trailer and discovered no damage. (Doc. 24-3 at 5). As stated, Defendant does not dispute any of these facts, but instead suggests this evidence cannot carry Plaintiff's burden to prove good condition at tender because Gladu "is not a representative of Plaintiff[ ] and has not been shown to have an interest adverse to" Defendant's. (doc. 27 at 12). Defendant cites no authority, and the undersigned is unaware of any, holding Plaintiff could not simply call Gladu as a witness in its case-in-chief; Gladu's "loyalty" is of no moment.

At minimum, Gladu's testimony and the bill of lading constitute direct, not merely circumstantial, evidence that the cargo was tendered in good condition, and at best, they constitute an admission by Defendant, through an agent, that Plaintiff has met its burden on this point. Either way, the evidence carries great weight. On consideration of the evidence submitted by the parties and drawing all reasonable inferences in favor of Defendant, the Court finds no evidence calling into doubt the results of Gladu's inspection or otherwise indicating the cargo may have been damaged prior to tender.[13] Accordingly, there is no triable issue of fact with regard to

---

[12] Defendant seems to ignore the fact that the bill of lading did contemplate a damage inspection at loading, instead focusing on the absence of an express "apparent good order" clause (doc. 22 at 15). The contemplation of a damage inspection and the requirement that any damage be noted on the bill of lading here together effectively constitute an indication that the cargo was received in "apparent good order." Again, given it was Defendant's statutory responsibility to issue a bill of lading, Defendant's repeated complaints about the language in bill of lading fall flat.

[13] Though Plaintiff does not rely on Caterpillar's Mechanical Test Report (referred to by the parties as the "Factory Witness Test" results), it appears to indicate the cargo

the question whether the cargo was tendered to Gladu in good condition. *See Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 493 (7th Cir. 2019) ("Summary judgment is appropriate . . . if, on the evidence provided, no reasonable juror could return a verdict in favor of" the nonmovant.) (alterations in original and internal quotation marks omitted).

### B.   *Arrival in Damaged Condition*

The parties do not dispute the fact the cargo was ultimately damaged, resulting in a $202,631.66 tab. Rather, the dispute lies in whether the cargo was damaged prior to or after delivery. According to Defendant, the damage is presumed to have occurred after delivery under the terms of the bill of lading, which mandate any damage to the cargo be noted on the bill of lading. (*See* doc. 3). This dispute, however, is frustrated by the fact the bill of lading also required Plaintiff or its designee to perform an offload damage inspection and thereafter sign the bill of lading (doc. 3), which Plaintiff claims

---

was operational and in good working order as of April 30, 2019, just under three weeks before Gladu received the cargo from Caterpillar (doc. 28-3), thus further supporting Plaintiff's claim despite Defendant's arguments to the contrary (doc. 28 at 8–9). Defendant objects to the admissibility of this document on the ground that it was not tendered during the time allotted for discovery. On careful consideration of the parties' arguments, the Court finds the document admissible. It appears Plaintiff's counsel believed it was included in its production of documents, and as soon as Plaintiff's counsel became aware that it was apparently not included, counsel sent the document to Defendant's counsel. And far from claiming harm from the delayed transmission, Defendant responds to the substance of the test in its Reply (doc. 28 at 8–9), demonstrating Plaintiff's counsel's error was harmless. At any rate, upon becoming aware of Plaintiff's counsel's apparent mistake during discovery, Defendant's counsel should have raised the issue. Instead, Defendant's counsel again tactically waited to raise the issue and inexplicably claimed in its Response dated December 3, 2021, the factory witness test was "apparently not done here" (doc. 27 at 13) despite receiving those test results on November 19, 2021 (docs. 28-2; 28-3). The undersigned will not tolerate gamesmanship of this type.

did not occur (docs. 24 at 6–7; 25 at 11–12). Because no authorized offload damage inspection occurred and because neither Plaintiff nor any designee of Plaintiff's signed the bill of lading, Plaintiff argues Defendant cannot escape liability for the damage simply because the damage was not noted on the bill of lading. (Doc. 29 at 8).

The bill of lading here unquestionably required an offload damage inspection to be completed and/or approved by "Dealer" (Plaintiff) or a designated party.[14] (Doc. 3). The undisputed facts establish Plaintiff never expressed to Defendant or its driver that it designated any party other than itself to complete the offload damage inspection or sign the bill of lading (docs. 24 at 4; 27 at 5, 15–16). And despite Defendant's apparent argument to the contrary (doc. 27 at 15–16), Plaintiff was not required to designate any third party to assume those responsibilities; the bill of lading clearly permitted either Plaintiff or its designee to do so. (Doc. 3).

Defendant nevertheless argues Plaintiff's admission it is the "Dealer" referred to on the bill of lading equates to a concession that Torres' signature on the line reserved for "Dealer or designated party" means Torres was either an agent of Dealer (Plaintiff) or its designated party. (Doc. 27 at 3). This argument is as unpersuasive as it is illogical. As it cites no authority and lacks any basis in reason, the Court summarily rejects it.

---

[14] Defendant denies this fact without explaining how the language "Offload damage inspection * (completed by Dealer or designated party)" above a signature line means anything other than Plaintiff or its designee was required to sign off on an offload damage inspection. (*See, e.g.*, doc. 27 at 5). The Court summarily rejects this undeveloped and illogical position.

16

Defendant also claims Torres had apparent authority to conduct the offload damage inspection and sign the bill of lading. "Apparent authority exists when a third-party reasonably relies on the *principal's manifestation* of authority to an agent. Statements by an agent are insufficient to create apparent authority." *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (citations omitted). While Defendant cites several factors that led Gladu to feel "comfortable" allowing Torres to perform the offload damage inspection and sign the bill of lading (doc. 27 at 16–17), none of those factors include any manifestations by Plaintiff, the alleged principal, thus precluding a finding of apparent authority. As above, Defendant's logic is seriously flawed. One does not obtain authority to do an act by simply doing the act. Because Torres had no authority to conduct the offload damage inspection or sign the bill of lading, Defendant's driver breached the bill of lading by allowing him to do both.

The question then becomes: what is the consequence for this breach? The doctrine of "unclean hands" is guided by the "equitable maxim that 'he who comes into equity must come with clean hands.'" *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). "This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Id.* at 815 (internal quotation marks omitted). By arguing Defendant breached the bill of lading as it did and seeking to prevent Defendant from evading liability for the lack of a notation of damage on that bill of lading, Plaintiff

effectively invokes the doctrine of unclean hands. Indeed, equity and justice do not permit Defendant to evade liability simply because no damage was noted on the bill of lading when Defendant's driver robbed Plaintiff of the opportunity to inspect the cargo upon offloading and note any damage in direct violation of the express terms of the bill of lading. However, this wrongful act should not wholly relieve Plaintiff of its burden to prove the cargo arrived in damaged condition, as Plaintiff suggests; that punishment is far too severe for the misconduct at issue and would result in a windfall for Plaintiff. On careful consideration, the undersigned concludes the appropriate remedy is to estop Defendant from arguing Plaintiff's claim is barred because the bill of lading omits any notation of damage. This levels the playing field by providing a proportionate remedy for the breach while still holding Plaintiff to its burden of proof under the Carmack Amendment.

Having resolved Defendant's breach of the bill of lading, the only remaining question is whether there is a triable issue of fact as to the second element of Plaintiff's Carmack Amendment claim. The answer is yes, as the evidence and undisputed facts do not definitively answer the question whether the cargo arrived in damaged condition. In support of Plaintiff's claim is the evidence that (1) the tractor-trailer partially left the roadway during transit, requiring the intervention of a tow truck (doc. 23-3 at 6–7); (2) an apparently uneventful offloading (doc. 23-1 at 4)[15]; and (3) the fact the cargo was noted as damaged at Plaintiff's first offload

---

[15] Defendant disputes this fact on the basis it is supported by video surveillance it claims was not produced during discovery (doc. 27 at 18–19); Plaintiff states the surveillance footage was produced via email on July 1, 2021 (doc. 29 at 8). Assuming

inspection (*e.g.*, doc. 24-9). In favor of Defendant's defense is Waddell's (doc. 22-1 at 22) and Gladu's (doc. 27-4 at 12) pre-offload inspections and Torres' offload damage inspection (doc. 3), none of which noted any damage to the generator. To answer the decisive question, several factual disputes—including whether the damage was visible while the cargo was on the trailer and how in-depth each respective inspection was—must be resolved as well as credibility determinations, thus precluding summary judgment in favor of either party.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (doc. 21) is DENIED and Plaintiff's Motion for Summary Judgment (doc. 23) is GRANTED IN PART and DENIED IN PART. This matter shall proceed to trial solely on the question whether the cargo arrived at the Alabama jobsite in damaged condition. To that end, the parties are directed to confer and, within fourteen (14) days, submit a proposed timeline for the remainder of this case including deadlines for motions in limine, responses thereto, and the final pretrial memo and proposed jury instructions as well as proposed dates for the Final Pretrial Conference and Jury Trial. The Court expects the Final Pretrial Conference to be set approximately two to three months from the date of this Order and the Jury Trial to be set approximately one month thereafter.

---

the footage was produced as alleged, Defendant's request to exclude is denied. If, however, the footage was not produced, Defendant may raise the issue in an appropriate pretrial motion.

SO ORDERED.

Entered this 25th day of February 2022.

                                                        s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                      United States Senior District Judge